UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SIGNATURE LAND DEVELOPMENT
CORPORATION; HARRIET ROSE
MYERINK; and MARLENE J. STERK AS
TRUSTEE OF THE STERK FAMILY
TRUST

          Plaintiffs,

v.

BYRON TOWNSHIP,

          Defendant.

Case No: 1:19-cv-230

Hon.

| |
|---|
| Jeffrey G. Muth (P65041)<br>MILLER JOHNSON<br>Attorneys for Plaintiff<br>45 Ottawa Avenue SW, Suite 1100<br>Grand Rapids, MI  49503<br>(616) 831-1700<br>muthjg@millerjohnson.com |

## COMPLAINT

Plaintiffs, Signature Land Development Corporation ("Signature"), Harriet Rose Myerink, and Marlene J. Sterk as Trustee of the Sterk Family Trust ("Sterk Trust"), state as follows for their complaint:

## INTRODUCTION

1. This case stems from Byron Township's (the "Township") unlawful denial of Plaintiffs' application to rezone two portions of combined land (the "Subject Property"); one portion into single-family detached home development, and the second portion—abutting a planned commercial development—into a higher density neighborhood of townhomes and condominiums.

2. The Township's Board of Trustees (the "Board") refused to rezone the Subject Property and, by doing so, rejected responsible development that is consistent with the neighborhood surrounding the Subject Property.

3. The Board's refusal to rezone the Subject Property is in direct contradiction to the findings of the Township's retained community planner; the recommendation of the Township Planning and Zoning Staff and Commission (the "Commission"); and the Township's own vision for development of the Subject Property, as expressed in the Township's Master Plan which was finalized and approved by the Township in January of 2017 ("Master Plan").

4. Although not reflected in the minutes, the Board seemingly based its denial of Plaintiffs' application on generic complaints about residential real estate development in the Township.

5. In denying Plaintiffs' application, the Board did not analyze Plaintiffs' compliance with rezoning criteria; ignored the Township's community planner's recommendations in support of rezoning the Subject Property; ignored the Commission's finding that the development comported with the criteria necessary for rezoning the Subject Property; and ignored the fact that rezoning the Subject Property as requested by Plaintiffs is necessary to develop the Subject Property in accordance with the requirements of the Master Plan.

6. In short, there was no rational basis for the Board's decision to deny Plaintiffs' application to rezone the Subject Property.

## PARTIES

7. Plaintiff, Signature, is a Michigan domestic profit corporation with its principal place of business located in the City of Grand Rapids, Kent County, Michigan

8. Plaintiff, Harriet Rose Myerink, is an individual who resides in Byron Center, Kent County, Michigan.

9. Plaintiff, Marlene J. Sterk is the trustee of the Sterk Trust with its registered address located in Byron Center, Kent County, Michigan.

10. Defendant, Byron Township is a charter township located in Kent County, Michigan.

## JURISDICTION AND VENUE

11. The Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution and laws of the United States.

12. Venue in this district is proper under 28 U.S.C. § 1391 because the Township is located in this district, a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and the Property is located in this district.

## FACTUAL ALLEGATIONS

13. The Subject Property is a roughly 63 acre area of open land located within Byron Township.

14. The Subject Property is made up of three adjoining parcels. The Sterk Trust owns two parcels, and Harriet Rose Myerink owns the third parcel, all of which are situated near the intersection of 84th Street and Burlingame Avenue in Byron Township. The Sterk Trust and Ms. Myerink have entered into sales agreements with Signature for the purpose of Signature's development of residential housing within the three parcels.

15. On March 19, 2018, Signature's Vice President, Michael R. McGraw, submitted a request to the Commission to approve a "Planned Unit Development" zoning designation for one portion of the proposed development by changing the portion's zoning designation from "R-U urban residential" to "MFR," or "multifamily residential."

16. After the portion's re-classification from R-U to MFR, Signature proposed that the MFR district then be further rezoned from MFR to an MFR Planned Unit Development, or "MFR-PUD." *See* March 19, 2018 Signature cover letter to the Commission, attached as **Exhibit 1**.

17. The MFR-PUD portion of Signature's development is planned to comprise of higher-density residential housing in the form of Ranch Condominium attached units and Townhome-type attached units, which is consistent with the use described in the Master Plan.

18. Signature's request also includes a zoning change for a second portion of land, currently zoned as an R-U PUD with and expired PUD plan.

19. Consistent with the Master Plan, Signature proposed that this portion be reverted to R-U zoning in order to facilitate the development of single family homes in this second area of Signature's development.

20. In support of its request, Signature retained the planning and engineering firm Exxel Engineering, Inc. ("Exxel Engineering"), which drafted Signature's Rezoning application, including its PUD plan for higher-density housing. *See* March 19, 2018 Exxel Engineering, Inc. letter and enclosures to Byron Township, attached as **Exhibit 2**.

21. In Signature's proposed development plan, the MFR-PUD higher density housing is to be built at the North end of the development site, adjacent to previously approved commercial PUD owned by Spartan Stores.

22. The new MFR-PUD development site is not directly connected to the older surrounding detached single family housing; Signature's planned R-U detached single family homes buffer the MFR-PUD district from the existing housing.

23. Signature proposed the MFR-PUD plan because it aligns with the approved use expressed in the Master Plan for the development of "Mixed and Attached Single Family Residential" housing on the Subject Property. *See* January 23, 2017 Byron Township Master Plan, attached as **Exhibit 3**, at pg. 79 (Map 18).

24. The MFR zoning would not allow the carefully planned higher-density housing that Signature wished to build, and which preserved positive features of the land for the community in general. The planned townhomes and condominiums emphasized open space and pedestrian access. The PUD plan provided for the preservation of natural drainage paths (protecting local wildlife) and certain existing tree lines.

25. This specialized approach could not be attempted without approval of the MFR-PUD plan.

### Byron Township's Community Planner Approves the Proposal

26. In advance of the Commission's May 21, 2018 meeting on Signature's rezoning proposals, Byron Township's retained community planning consultant, David M. Jorousek, issued memorandum opinions on both the R-U rezoning and MFR rezoning to MFR PUD with a preliminary PUD Plan. *See* May 11, 2018 David M. Jirousek Memoranda to the Commission, attached as **Exhibit 4**.

27. Analyzing the R-U plan, Mr. Jirousek considered the Township's zoning ordinance criteria in holding that the proposed area fit the criteria for R-U zoning, and that the

proposal fit the "general future land use guidance included in the Master Plan….I recommend approval of the rezoning of the property to R-U." Ex. 4.

28. Regarding the MFR-PUD plan, Mr. Jirousek again considered statutory criteria, and again recommended approval of the MFR-PUD plan, contingent on provision of a phasing plan, Township engineer/BGUA review and recommendations, and Fire Department review and approval.

29. Regarding the MFR-PUD plan, Mr. Jirousek noted the PUD was "consistent with the future land use map of the Township's adopted Master Plan[,]" and that the Master Plan's approval of future commercial development on the corner of 84th Street and Burlingame Avenue (not part of Signature's project) should be buttressed with "higher density attached single-family housing[.]" *See* Ex. 4.

30. This is exactly the type of housing contemplated by Signature's proposed MFR-PUD rezoning; with that portion of land directly corresponding with the area contemplated in the Master Plan: the land is directly south of the planned commercial development with traffic access to Burlingame Avenue. *See* Ex. 3 at pg. 79 (Map 18).

**May 21, 2018 Commission Meeting**

31. On May 21, 2018, the Commission held a public meeting to consider whether to approve (1) the R-U rezoning; and (2) the MFR rezoning and approval of MFR-PUD plan to the Township board for a legislative vote. Several members of the public raised general concerns on multiple issues regarding the development. *See* May 21, 2018 Byron Township Planning Commission Minutes, attached as **Exhibit 5**.

32. Many of the concerns were voiced by residents of Bluffview Drive, a "plug street" that connects existing housing to 84th Street, but which ends—with no connection to additional streets—at the western border of Signature's planned R-U housing.

33. Bluffview Drive residents spoke at the meeting, wishing to "keep the end of their street a cul-de-sac[,]" and submitted a petition to deny extension of the Bluffview Drive plug street. *See* Ex. 5 at 1-2; Woodruff Estates Residents' Letter and Petition submitted to the Commission on May 21, 2018, attached as **Exhibit 6.**

34. Other Township residents made similar general protests, not bearing any relevance on the Signature Plan's comportment with Byron Township zoning criteria, but rather reflected "not-in-my-backyard" or "NIMBY" attitudes to new surrounding development in general. Some residents complained of general increased traffic, while others protested higher-density housing in the MFR-PUD. *See generally* Ex. 5.

35. Despite general NIMBY complaints voiced by residents at the meeting, the Commission approved by a 5-0 vote (with two members absent) the proposed R-U rezoning. The Commission conditionally approved recommending the Board re-zone the MFR district, conditioned on approval of the PUD plan. Ex. 5 at 12. Upon voting, one commissioner noted the plan's close alignment with the Township's future vision of the area in its 2017 Master Plan: "Commissioner Pitsch agreed that the MFR designation would be a good transition to the master planned commercial [sic] at 84th and Burlingame." *Id.* The issue of Commission approval of the PUD was tabled until the Commission's June 18, 2018 meeting. *Id.* at 14.

**June 18, 2018 Commission Meeting**

36. At the June 18, 2018 Commission meeting, the issue of PUD approval to the Byron Township Board was decided. Commissioner Newhouse noted that the PUD plan is

"exactly what we planned for on the master plan." *See* June 18, 2018 Byron Township Planning Commission Minutes, attached as **Exhibit 7**, at 9. Commissioners Kilgore and Marcus expressed concerns with increased traffic and the MFR size, but even Kilgore noted that the PUD "meet[s] the master plan[.]" *Id.* The Commission voted 4-2 to recommend approval of the PUD to the Township Board, with Commissioners Kilgore and Marcus as the only "no" votes. *Id.* at 10.

### July 23, 2018 Township Board Meeting and Denial of Rezoning

37. Having secured approval of the Township's retained community planner, and the approval of the Commission, the next and final step in the process was legislative approval by the Township Board, which met on July 23, 2018 to consider the issue.

38. At this final meeting, several residents appeared to voice concerns about the PUD project, including "environmental impact, increased traffic and speed, lack of an access drive onto 84th St., students cutting through the development, safety for residents, stub streets opening up, and overall impact on the community." *See* July 23, 2018 Byron Township Board Meeting Minutes, attached as **Exhibit 8**, at 2.

39. Mr. McGraw stated at the meeting that Signature was willing to work with the Kent County Road Commission regarding some of the resident's complaints about traffic access. Shortly after the public comment period and Mr. McGraw's statement to the Board, Byron Township Board Trustee Louise Evans, supported by Trustee Peggy Sattler, moved to deny the rezoning request from MFR to MFR-PUD, effectively scuttling the key, necessary feature in Signature's overall plan. The Board voted 5-2 to deny the request.

40. The Board denial of the PUD was completely unrelated to the standard applicable to a rezoning request.

41. The Township Planner stated that the PUD comported with the Township's Master Plan and rezoning criteria, and that it should be approved contingent on completion of routine steps.

42. The Commission approved rezoning to the Township Board, with one of the two dissenting Commissioners actually admitting on the record that the PUD fit the Master Plan.

43. At no point in the public hearings was any doubt cast upon Signature's adherence to applicable standards necessary for rezoning.

44. Because the applicable standards for rezoning the Property have been met, as confirmed by the Commission and the Township's planning consultant, the Board's denial of Plaintiffs' rezoning application was arbitrary, unreasonable and without substance and factual support and was a pretext for members of the Township Board's true purpose, which was to prevent the reasonable and lawful use of the Property.

45. There is no reasonable, real, and substantive governmental interest to preclude Plaintiffs' proposed plans and to develop the Property pursuant to Plaintiffs' development plans.

## COUNT I
## VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS

46. Plaintiffs incorporate the preceding allegations.

47. In acting upon the request for rezoning of the Property, the Township was subject to the duties, limitations, liabilities and restrictions imposed by law including the Michigan Constitution.

48. Plaintiffs enjoy constitutionally protected rights to use and enjoy the Property under the Michigan Constitution of 1963, Article I, Section 17.

49. The Township's denial of PUD plan approval, as applied to the Property, is an arbitrary and unreasonable restriction upon Plaintiffs' use and enjoyment of the Property.

50. The Township's zoning decision, as applied to the Property, advances no governmental interest directly related to public health, safety and welfare, and indeed runs counter to the Township's own vision of development in the area, as expressed in the 2017 Township Master Plan.

51. The Township's denial of Plaintiffs' request for rezoning to allow the development proposed by Plaintiffs does not advance a reasonable governmental interest directly related to public health, safety and welfare.

52. The Township's denial of the request for rezoning of the Property and allowing the development proposed by Plaintiffs was without basis and was an arbitrary and capricious use of its police power in that it was based upon materially inaccurate facts, made with reckless and/or intentional disregard of the actual facts of the matter and advanced no governmental interest directly related to public health, safety and welfare.

53. Plaintiffs have been deprived of the reasonable and lawful use of the Property as a consequence of the Township's actions.

## COUNT II
## UNCONSTITUTIONAL TAKING OF PROPERTY BY REGULATION

54. Plaintiffs incorporate the preceding allegations.

55. The Township's zoning regulations and decisions concerning the Property:

   i. Have denied Plaintiffs a reasonable and lawful use of the Property;

   ii. Constitute arbitrary, capricious and unreasonable actions, decisions and exclusions of reasonable land uses; and

   iii. Bear no real and substantial relationship to legitimate governmental objectives.

56. The Township's conduct and activity as specifically alleged in this Complaint:

    i. Constitutes a taking of the Property without just compensation, depriving Plaintiffs of their rights secured by of the Michigan Constitution; and

    ii. Has damaged, and continues to damage Plaintiffs.

## COUNT III
## 42 U.S.C. § 1983 VIOLATIONS

57. Plaintiffs incorporate the preceding allegations.

58. This count and claim is brought pursuant to the Fifth Amendment and Fourteenth Amendment to the United States Constitution and pursuant to 42 USC § 1983.

59. Plaintiffs have a right to the lawful use and enjoyment of the Property under the Fifth Amendment and Fourteenth Amendment to the United States Constitution.

60. The Township has unlawfully deprived Plaintiffs of their right to the lawful use and enjoyment of the Property.

61. The Township has unlawfully excluded PUD uses from the Property for the purpose of preventing Plaintiffs from lawfully using the Property.

62. The deprivation of Plaintiffs' rights secured by the Fifth Amendment and Fourteenth Amendment to the United States Constitution has occurred as a consequence of officially adopted actions of the Township under color of state law.

63. Plaintiffs have suffered and continue to suffer damages as they continue to be deprived of the reasonable and lawful use of the Property as a consequence of the Township's actions.

## COUNT IV
## DECLARATORY JUDGMENT

64. Plaintiffs incorporate the preceding allegations.

65. The Township's denial of the MFR-PUD plan is an arbitrary and unreasonable restriction upon Plaintiffs' use and enjoyment of the Property.

66. The Township has unlawfully deprived Plaintiffs of their right to the lawful use and enjoyment of the Property.

67. The Township's denial of Plaintiffs' request for rezoning of the Property and allowing the development proposed by Plaintiffs was without basis and was made with reckless and/or intentional disregard of the actual facts of the matter and advanced no governmental interest directly related to public health, safety and welfare.

68. The facts and circumstances of this case present an actual controversy regarding the rights and legal relations of the parties.

69. The rights of the parties can only be determined by a declaratory judgment.

70. Based on the facts and circumstances, the Township must be estopped in its attempt to prevent the rezoning of the Property and denying Plaintiffs' ability to use the Property in a manner consistent with Township's Master Plan.

71. Based on the facts and circumstances, Plaintiffs are entitled to a declaration that the Property should be rezoned as PUD and that the overall proposed development plan including R-U zoning is approved.

**WHEREFORE**, Plaintiffs request that this Court:

A. Enter a judgment in Plaintiffs' favor and against the Township declaring that the Township's action in refusing to rezone the Property from RU-

       PUD (expired plan) to MFR to MFR-PUD with approval of a preliminary PUD plan, as well as RU-PUD (expired plan) to RU, constitutes violations of Plaintiffs' substantive due process rights which have damaged Plaintiffs in an amount to be determined by the Court;

B.    Enter a judgment in Plaintiffs' favor and against the Township declaring that the Township's action in refusing to rezone the Property from RU-PUD (expired plan) to MFR to MFR-PUD with approval of a preliminary PUD plan, as well as RU-PUD (expired plan) to RU constitutes a taking of the Property which has damaged Plaintiffs in an amount to be determined by the Court and at minimum requires just compensation;

C.    Enter a judgment in Plaintiffs' favor and against the Township declaring that Plaintiffs' site plan is reasonable and is approved.

D.    Enter a judgment in Plaintiffs' favor and against the Township declaring that the Township's action in refusing to rezone the Property from RU-PUD (expired plan) to MFR to MFR-PUD with approval of a preliminary PUD plan, as well as RU-PUD (expired plan) to RU was without basis and was made with reckless and/or intentional disregard of the actual facts of the matter and advanced no governmental interest directly related to public health, safety and welfare, and that the Property should be rezoned accordingly, consistent with the recommendation of the Township's Planning Commission;

E.    Enter a judgment in Plaintiffs' favor and against the Township declaring that the Township's action in refusing to rezone the Property from RU-PUD (expired plan) to MFR to MFR-PUD with approval of a preliminary PUD plan, as well as RU-PUD (expired plan) to RU has unlawfully excluded uses from the Property for the purpose of preventing Plaintiffs from lawfully using the Property which has damaged Plaintiffs in an amount to be determined by the Court; and

    F.    Provide Plaintiffs whatever further and additional relief this Court deems just, including awarding Plaintiffs all costs and attorney fees it has expended in bringing this action.

                MILLER JOHNSON
                Attorneys for Plaintiff

Dated: March 26, 2019        By: /s/ Jeffrey G. Muth
                                    Jeffrey G. Muth (P65041)
                                    45 Ottawa Avenue SW, Suite 1100
                                    Grand Rapids, MI 49503
                                    (616) 831-1700
                                    muthjg@millerjohnson.com